United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 29, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-90739 |
| ALPINE SUMMIT ENERGY | § | |
| PARTNERS, INC., *et al.*, | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| ALPINE NON-OP LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 23-3244 |
| | § | |
| HB2 ORIGINATION, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This opinion concerns whether Larry Jacobs, former counsel for HB2 Origination, LLC, breached his ethical duties owed to HB2 by submitting an affidavit on behalf of Alpine Non-Op LLC in litigation that was: (i) on the subject of his prior representation; and (ii) adverse to his former client. The affidavit details Jacobs's role in drafting the investment agreements, including his impressions of their structure and legal effect. The affidavit was offered in support of Alpine Non-Op's summary judgment motion.

At the summary judgment hearing, the Court struck Alpine Non-Op's summary judgment motion for relying on the inadmissible affidavit and for soliciting Jacobs to give an affidavit in violation of his duties owed to HB2. ECF No. 128 at 10. The Court allowed Alpine Non-Op to provide supplemental briefing to reconsider the ruling.

The Court has reviewed the briefs. Under the Texas Disciplinary Rules of Professional Conduct ("TDRPC"), Jacobs breached his duty of loyalty owed to HB2. The Court's Ruling stands.

## BACKGROUND

In August 2022, Sam Haskell approached Alpine's CEO, Craig Perry, to explore an investment opportunity. ECF No. 114-1. Haskell and his group of investors proposed to contribute capital in exchange for non-operating working interests in oil and gas leases and four wells to be drilled on those leases (The leases are the "Properties"; the non-operating working interests are the "Percentage Interests" in the Properties.). ECF No. 1-2 at 6. The investment vehicle was structured through the formation of a general partnership named Alpine 2022 Non-Op. HB2 was proposed to serve as managing partner of Alpine 2022 Non-Op.

Jacobs was retained by HB2 to document the business transaction. He drafted a nominee agreement and a general partnership agreement. HB2 and Alpine Non-Op executed the Nominee Agreement and the General Partnership Agreement, each with an effective date of August 19, 2022. ECF Nos. 1-1, 1-2. The Nominee Agreement designates HB2 as Nominee holding legal title to the Percentage Interests in the Properties described in Exhibit A of the Agreement. *See* ECF No. 1-2.

On November 6, 2023, Alpine Non-Op LLC commenced this adversary proceeding, primarily seeking a declaratory judgment that the Percentage Interests in the Properties[1], along with their percentage distribution rights and revenues[2], and their percentage interest in AFE

---

[1] The Complaint defines "Subject Properties" as the wells and leaseholds at Sampson-Mueller #5H, Porter Murphy #1H, San Roman South #101H, and San Roman South #102H. ECF No. 1 at 4.

[2] The Complaint defines "partnership items" as "all distributions, profits, emoluments and other receipts and revenues or other things of value of any nature or kind received with respect to, in exchange for or arising from the Subject Properties . . . ." ECF No. 1 at 5.

refunds[3] are not property of the Bankruptcy Estate. ECF No. 1 at 7. The Properties were sold pursuant to this Court's order approving the sale of certain assets. Case No. 23-90739, ECF No. 623. Prior to the sale, the parties entered into a stipulation allowing sale of the Percentage Interests[4] "subject to the respective rights of ach of the Partnership, ANOLLC, each other partner in the Partnership and the Debtors as they relate to the allocation of the sales proceeds attributable to the Sale of the Subject Interests." Case No. 23-90739, ECF No. 354.

On January 9, 2025, Alpine Non-Op filed its summary judgment motion, seeking judgment that the investors in the partnership held equitable title to the Percentage Interests that they purchased from HB2 and that those interests were never property of the bankruptcy estate. ECF No. 114 at 12 ("Plaintiffs, comprised of the Partnership and Alpine Non-Op LLC and other partners of the Partnership, seek judgment as a matter of law that said Partnership and, or its partners have at all times held equitable title to non-operating oil and gas leasehold interests they purchases from the debtors . . . ."). In support of its summary judgment motion, Alpine Non-Op LLC provides the Jacobs Affidavit. ECF No. 114-4.

On February 3, 2025, Paul Jansen, GUC Trustee, successor in-interest to HB2 filed its Motion to Strike the Jacobs Affidavit.

The Court held a hearing on the motions for summary judgment on March 31, 2025. The Court denied Alpine Non-Op LLC's summary judgment motion and allowed Alpine Non-Op to file supplemental briefing to reconsider the Court's ruling on one issue: "Why it did not

---

[3] AFE is an abbreviation for "authorization for expenditure": an estimate for an anticipated expenditure for a project. HB2 would issue an AFE and the partners would provide funding in response to the AFE. Alpine Non-Op alleges that as of the Petition Date, it was owed around $1.3 million for refunds related to AFEs. ECF No. 1 at 5.

[4] Defined as "economic benefits from an undivided 16.3446% of HB2's interests in and to those oil and gas wells identified on Schedule 1 . . . ." Case No. 23-90739, ECF No. 354 at 2. Schedule 1 lists the Properties. Case No. 23-90739, ECF No. 354 at 4.

breach [Larry Jacobs's] duty of loyalty to disclose the matters in a declaration without the authority of his former client?" ECF No. 128 at 10.

The parties filed supplemental briefings, and the Court took this matter under advisement on April 29, 2025.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The bankruptcy case was referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

### I. JACOBS'S DUTIES UNDER TEXAS LAW

The Local Rules of the Southern District of Texas require lawyers appearing before this Court to abide to the Texas Disciplinary Rules of Professional Conduct at a minimum. S.D. TEX. LOCAL RULES APP. A R.1.A. Texas Rule 1.09(c) provides that a lawyer who formerly represented a client may not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

TDRPC 1.09(c). Comment 7 explains: "[I]nformation acquired by the lawyer while representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client." TDRPC 1.09 cmt. 7.

In support of Alpine Non-Op' summary judgment motion, Jacobs submitted an affidavit against his former client, HB2. The affidavit is replete with internal discussions with his former clients and his mental impressions regarding his representation. His affidavit addresses the purpose of the partnership and nominee agreements and contain legal conclusions that reach the material disputes in the cross-motions for summary judgment. The affidavit supports Alpine Non-Op's position, which is directly adverse to his former client with respect to issues on which Jacobs had been counsel to HB2. Jacobs states, for example, that:

- "I was retained by HB2 Origination, LLC to draft a series of agreements . . . to facilitate the drilling and completion of certain wells through the funding of substantial funds from Plaintiffs to the Partnership and from the Partnership to HB2 as nominee for the Partnership, and the acquisition of non-operating working interests in those wells and the oil and gas leaseholds associated therewith . . . ."

- "The nominee agreement between HB2 and the Partnership provided that HB2 held mere legal title to the Subject Properties as defined therein for the benefit of the Partnership with the result that the Partnership, and Plaintiffs as its partners, owned equitable title to the Subject Properties."

- Counsel for HB2 contacted Jacobs for "advice on how to structure an investment for drilling new wells that had to be completed very quickly. [Jacobs] responded by suggesting a nominee agreement in favor of a to be organized general partnership which meant title did not have to be transferred."

ECF No. 114-4.

Alpine Non-Op argues two points in defense of the affidavit: (1) that the information it contains is not confidential, and (2) that any duty of confidentiality was waived when HB2 authorized Jacobs to speak with Haskell about the agreements. Neither argument justifies the breach.

The Texas Supreme Court has held that "if the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during representation." *In re Thetford,* 574 S.W.3d 362, 373 n.16 (Tex. 2019) (quoting *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010)). The scope of confidential information is extremely broad. *In re George,* 28 S.W.3d 511, 523 (Tex. 2000) (Hecht, J., dissenting) (noting that "[a] client confidence is any secret disclosed by a client to a lawyer. . . . Even the most important client confidence may be no more than a name, a number, a list, a diagram, a password, or a plan"); *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834 (Tex. 1994) ("[V]irtually any information relating to a case should be considered confidential: the Disciplinary Rules define 'confidential information' to encompass even unprivileged client information."). As discussed *supra*, the Jacobs Affidavit reflects information acquired during his representation of HB2, including legal impressions, purpose, and understanding relating to the formation and effect of the investment agreements.

Alpine Non-Op argues that the Affidavit merely reflects the conversation that Jacobs had with Haskell in 2022 in the presence and direction of HB2. ECF No. 128 at 7. Haskell discloses the conversation in his Declaration offered in support of Alpine Non-Op's summary judgment motion. ECF No. 114-1 at 5–6. But the Jacobs affidavit goes beyond the information disclosed in the Haskell Declaration, which states in part:

> I became aware that HB2 had retained Larry E. Jacobs, a Houston attorney, to draft a nominee and partnership agreement, and Mr. Jacobs discussed the structure of those agreements with me, indicating that the partnership and its partners under the nominee and partnership agreements would own true beneficial title—equitable title to the non-operating oil and gas interests purchased by the partnership and its partners in return for their contributions towards the drilling and completion of the Wells and the earning of leasehold acreage in connection therewith. Mr. Jacobs drafted the nominee and partnership agreements to establish and reflect that true

> beneficial ownership and equitable title in and to the non-operating oil and gas interests purchased by the Partnership and its partners in return for their contributions towards the drilling and completion of Wells and the earning of leasehold acreage in connection therewith was held by the partnership and, or its partners.

ECF No. 114-1 at 5–6.  The Jacobs Affidavit contains internal client communications:

- "Christopher ("Chris") Nilan, then Managing Director of Capital Markets and Development, and Christie Holmstrom contacted me for advice on how to structure an investment for drilling new wells that had to be completed very quickly.  I responded by suggesting a nominee agreement in favor of a to be organized general partnership which meant title did not have to be transferred."  ECF No. 114-4 at 4–5.

It also contains Jacobs's mental impressions and his legal conclusions:

- "To my knowledge, Alpine and HB2 never asserted ownership of the Subject Properties but always considered the Partnership and Plaintiffs as its contributing partners as the owners of the Subject Properties and all attributes thereto."  ECF No. 114-4 at 4.

- "I understood by advancing funds to facilitate the drilling of wells and earning of acreage by HB2 that the Partnership and Plaintiffs as its partners owned equitable title to the Subject Properties, and HB2 held mere legal title to the Subject Properties in a purchase money resulting trust for the benefit of the Partnership and Plaintiffs as its contributing partners."  ECF No. 114-4 at 4.

- "The nominee agreement between HB2 and the Partnership provided that HB2 held mere legal title to the Subject Properties as defined therein for the benefit of the Partnership with the result that the Partnership, and Plaintiffs as its partners, owned equitable title to the Subject Properties."  ECF No. 114-4 at 4.

Under Texas law, it is irrebuttable that the information disclosed in Jacobs's affidavit is confidential client information

Further, a prior authorized disclosure of privileged attorney-client information does not waive Jacobs's continuing duty of confidentiality owed to HB2. Alpine Non-Op argues that Jacobs waived "any confidentiality or privilege" with information that he disclosed to Haskell at the direction of HB2 in 2022. ECF No. 130 at 22. But confidential information does not become freely revealable after a prior disclosure. In *Sealed Party v. Sealed Party*, the court rejected an attorney's claim that publicly available court pleadings stripped information of its confidential status, holding: "[n]othing in Texas Rule 1.05(a) or elsewhere in the Texas Rules suggests that client information loses its status as confidential vis à vis the former attorney merely because the information has been disclosed in court pleadings." No. Civ.A. H-04-2229, 2006 WL 1207732, at *11 (S.D. Tex. May 4, 2006). Similarly here, the information in the Jacobs Affidavit did not lose its confidential status because Jacobs discussed the transaction with Alpine Non-Op. Under Texas law, an attorney has a continuing duty to preserve a former client's confidential information. *Id.* at *7. This principle does not vanish because privileged information was previously discussed.

There are very limited exceptions to this duty of confidentiality; none of which are applicable here. Under Texas Rule 1.05, an attorney may reveal confidential information if: (1) they get express authorization "to do so in order to carry out the representation", or (2) they get the client's consent after consultation. TDRPC R. 1.05(c)(1), (2). The consent right belongs exclusively to the GUC Trustee. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 354, 358 (U.S. 1985) (holding that a trustee of a corporation in bankruptcy has exclusive waiver powers with respect to prebankruptcy communications). There is no evidence that Jacobs received the GUC Trustee's consent to reveal the confidential information contained in his affidavit.

Alpine Non-Op solicited Jacobs to breach his ethical duty of confidentiality owed to his former client under Texas law.

## II. THE COURT'S PRIOR RULING AND ATTORNEY'S FEES

At the March 31, 2025 hearing, the Court struck Alpine Non-Op's summary judgment motion for offering the Jacobs Affidavit in violation of his ethical duties owed to HB2. The Court allowed the parties to submit briefings to reconsider the ruling.

Alpine Non-Op states that if the Court were to find that Jacobs's affidavit was offered in violation of the former attorney's ethical duties, the Court should only strike the affidavit. ECF No. 134 at 6. The GUC Trustee argues that the March 31 ruling should stand because the other declarations, of which the summary judgment motion relies upon, are allegedly tainted by the Jacobs affidavit. ECF No. 131 at 11–12 ("Notably, the other declarations contain language that mirrors Jacobs's assertions, suggesting that each declarant relied upon Jacobs's disclosures to assist in drafting their declarations."). The GUC Trustee notes that the declarations were executed after Jacobs executed his affidavit. ECF No. 131 at 22. The Court has reviewed the declarations and cannot conclusively determine whether the declarations were tainted by the Jacobs affidavit.

In considering whether to strike pleadings, the Court is given discretion. *See Scarborough v. Rotocraft Leasing Co., LLC*, No. 4:23-cv-04183, 2024 WL 3418004, at *2 (S.D. Tex. July 15, 2024) ("A court may, either by motion or *sua sponte*, "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." (quoting FED. R. CIV. P. 12(f)). The Court cannot identify any case law directly on point. In this case, Jacobs's disclosure was solicited by Alpine Non-Op. *The confidentiality breach was intended* by Alpine Non-Op.[5] Alpine Non-Op's solicitation of the breach is wholly unexcused. For that reason, the Court will not change its March 31 oral ruling.

---

[5] It is the disclosure that was intended. The Court makes no findings as to whether Alpine Non-Op or its attorneys had concluded that the disclosure was prohibited. Nevertheless, they are charged with awareness of the law. The solicitation of an affidavit from former counsel is so unusual that an inquiry of its legality should have occurred.

Lastly, the GUC Trustee seeks attorneys' fees for litigating this ethical issue. "Under Rule 56(h), if a court determines that an affidavit or declaration filed with summary judgment is submitted in bad faith, it may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." *Mandawala v. Baptist Sch. of Health Pros.*, No. 23-50258, 2024 WL 1461943, at *4 (5th Cir. Apr. 4, 2024) (quotations omitted); FED R. CIV. P. 56(h). The Court finds, for the reasons stated *supra*, that reasonable and necessary attorneys' fees should be awarded to the GUC Trustee for the bad faith filing of the Jacobs Affidavit.

## CONCLUSION

A separate order will be entered.

SIGNED 07/28/2025

Marvin Isgur
United States Bankruptcy Judge