United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 24, 2026

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-90739** |
| **ALPINE SUMMIT ENERGY** | § | |
| **PARTNERS, INC.,** *et al.*, | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **ALPINE NON-OP LLC,** *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 23-3244** |
| | § | |
| **HB2 ORIGINATION, LLC,** *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Paul Jansen, in his capacity as GUC Trustee, successor-in-interest to HB2 Origination, LLC, and Ageron Energy II, LLC, moves for summary judgment on several issues relating to whether certain oil and gas interests constitute property of the bankruptcy estate.

For the reasons stated below, the Court finds:

1. The GUC Trustee has not demonstrated that the Partnership's express trust theory over the Subject Properties fails as a matter of law.

2. To the extent the Partnership asserts equitable trust theories over the Subject Properties, those theories fail.

3. If the Nominee Agreement created an express trust granting the Partnership an equitable interest in the Subject Properties, the equitable interest is avoidable under 11 U.S.C. § 544(a)(3).

1 / 20

4. The Partnership has no equitable interest in the Sale Proceeds, Prorated Refund, Working Interest Owner Payments, or Disbursement Amounts.

5. The Partnership's express trust, resulting trust, purchase money resulting trust, and constructive trust theories as to the AFE Refunds fail.

## BACKGROUND

The Plaintiffs are certain oil and gas investors[1] in a Texas partnership formed for the purpose of investing in and deriving economic benefits from certain oil and gas interests that were owned by HB2.  Some of these investors are insiders of Debtor-affiliated entities.

Prior to the formation of the Partnership, HB2 held marketable title to 16.3446% of interests in wells, equipment, pipelines, and appurtenant rights located in Webb County and Fayette County, Texas ("Subject Properties").  ECF No. 113-1 at 114.  HB2 initially funded the drilling and completion of the wells of the Subject Properties.  ECF No. 113-1 at 8.

The business arrangement was structured by two agreements. The General Partnership Agreement provides that the "purpose of the Partnership shall be to derive the economic benefits from the Subject Properties[2]."  ECF No. 113-1 at 77.  Under the Agreement, the partners were required to contribute capital to receive an interest in the partnership.  ECF No. 113-1 at 77.  Ownership of a partnership interest entitled a partner to allocations of profits and losses and to distributions

---

[1] The partners are HB2, William Wicker, Alpine Non-Op LLC, Tauber Exploration & Production Co., Goldston Oil Corporation, Raptor TRex, LLC, Tauber Interests, Ltd., Darren Moulds, Terry McBurney, Shannon Tilley, and Reagan Brown.  ECF No. 113 at 19.  The GUC Trustee contends that HB2 was never a partner in the partnership.  But the Partnership Agreement designates HB2 as the "Managing Partner" which has "all of the rights granted to a general partner of a limited partnership under the Texas Revised Limited Partnership Act."  ECF No. 113-1 at 77.

[2] The Nominee Agreement defines "Subject Properties" as a 16.3446 percent interest in the wells, equipment, pipelines, and appurtenant rights located in Webb County and Fayette County, Texas.  ECF No. 113-1 at 20, 24.

of cash flow.  ECF No. 113-1 at 77.  HB2 did not contribute capital to the partnership and was not assigned a partnership interest.  ECF No. 113 at 18.

In connection with the General Partnership Agreement, HB2 and the partnership entered into a nominee agreement, which designated HB2 as nominee.  The Nominee Agreement provides: "[HB2] will hold, as from the date hereof, the Subject Properties and all right, title and interest therein and benefit to be derived therefrom, as nominee for and on behalf of the Partnership."  ECF No. 113-1 at 20.  The Nominee Agreement further provides:

> all distributions, profits, emoluments and other receipts and revenues or other things of value of any nature or kind received with respect to, in exchange for or arising from the Subject Properties ("**partnership items**") shall belong legally to the Partnership, and . . . that Nominee has no legal interest in the partnership items.  Nominee shall promptly remit to the Partnership all partnership items received by Nominee.

ECF No. 113-1 at 20 (emphasis added).

In essence, the Nominee Agreement required HB2 to hold its pre-existing 16.3446% interest in the Subject Properties for the benefit of the Partnership.

In the ordinary course of business, HB2 would issue Authorizations for Expenditures ("AFE") to the Partnership.  ECF No. 113-1 at 94.  Partners had discretion to provide funding requested in a given AFE to participate in the corresponding project.  ECF No. 113-1 at 94.  Prior to the Petition Date, the partners provided funding in response to the AFEs.  The Partnership asserts that it is owed over $1 million in refunds from previously paid AFEs.  ECF No. 113-1 at 94.

HB2 and its affiliates filed for chapter 11 protection on July 5, 2023.  Following the Petition Date, HB2 and the Partnership entered a

stipulation allowing the Debtors to sell the "Subject Interests[3] . . . subject to the respective rights of each of the Partnership, ANOLLC, each other partner in the Partnership and the Debtors as they relate to the allocation of the sale proceeds attributable to the sale of the Subject Interests." ECF No. 113-1 at 114. The Subject Interests were sold pursuant to this Court's order shortly after. Case No. 23-90739, ECF No. 623.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank*, 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party.

---

[3] The Stipulation defines the Subject Interests as "an undivided 16.3446% interest (on an 8/8ths basis) of HB2's interests in and to those oil and gas wells" in Webb County and Fayette County, Texas. ECF No. 113-1 at 116. That definition is consistent with the definition of Subject Properties throughout this Opinion.

*Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014).  Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).  The Court need only consider the cited materials, but it may consider other materials in the record.  FED. R. CIV. P.  56(c)(3).  The Court should not weigh the evidence.  *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996).  A credibility determination may not be part of the summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## JURISDICTION

28 U.S.C. § 1334 provides the District Court with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This Court has authority over this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (B).  The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### I.   SUBJECT PROPERTIES

The GUC Trustee asserts that the Subject Properties are estate property as a matter of law.  Estate property is broadly defined as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

Section 541(d) limits property entering the estate under § 541(a)(1) or a(2) when the debtor holds only legal title but not an equitable interest[4] in property.

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

§ 541(d).

The Partnership asserts that it holds an equitable interest in the Subject Properties and that interest was never part of the Estate under § 541(d). The language in § 541(d) is critical.  The text of § 541(d) is clear that  the limitation applies only to rights established under subsections (a)(1) and (a)(2) rather than to all subsections under § 541(a).

The confusion arises from the 1984 amendments to the Bankruptcy Code.

Before § 541(d) was amended in 1984, the Fifth Circuit held that § 541(d) prevents the debtor from expanding the bankruptcy estate by including interests that the debtor merely held for the benefit of others. *See In re Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 968 (5th Cir. 1983).   Before 1984, § 541(d) applied to the entirety of subsection (a).  Since 1984, § 541(d) applies only to subsections (a)(1) and (a)(2).  This distinction is consequential as the GUC Trustee argues that even if the Partnership has an equitable interest in the Subject Properties, that interest is avoidable under § 544(a)(3).

As explained further below, the GUC Trustee is correct on the law.  The real issue is whether he is correct on the facts.

---

[4] "An 'equitable interest' is an interest held by virtue of an equitable title or claimed on equitable grounds, such as an interest held by a trust beneficiary."  3A BANKR. SERV. L. ED. § 29:102 (2026).

The GUC Trustee first argues that the Agreements did not convey any interest in the Subject Properties to the Partnership prior to the Petition Date. The Nominee Agreement provides that HB2 "will hold, as and from the date hereof, the Subject Properties and all right, title and interest therein and benefit to be derived therefrom, as nominee for and on behalf of the Partnership." ECF No. 113-1 at 20. The Agreement contains no language conveying title of the Subject Properties to the Partnership. It is undisputed that no assignment of the Subject Properties to the Partnership was recorded in real property records. Legal title to the Subject Properties remained with HB2 as of the Petition Date. The Partnership concedes in its complaint that: "Alpine never made or caused to be made the assignments it agreed to provide before declaring bankruptcy." ECF No. 100 at 12.

The Partnership relies primarily on parol evidence to reflect that the parties contemplated a future assignment of the Subject Properties. *See* ECF No. 116-1 at 3–4. Under Texas law, parol evidence cannot be introduced to vary, add to, or contradict the terms of an unambiguous contract. *Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 222 (Tex. 1977). The Court finds no ambiguity in the Agreements. Parol evidence cannot be introduced to read the Agreements as providing for a future conveyance of the Subject Properties.

The Partnership further argues that paragraph 5 of the Nominee Agreement provides for the future assignment of the Subject Properties. ECF No. 116 at 16. Paragraph 5 reads: "Nominee shall promptly deliver to the Partnership all instruments with respect to the Subject Properties, together with all recording information relative thereto, to the extent that such Nominee may come into possession of any thereof." ECF No. 113-1 at 20. The provision does not indicate an intent to assign the Subject Properties to the Partnership at a later date. It merely requires HB2, as nominee, to deliver documentation relating to the Subject Properties to the Partnership.

The Partnership contends that, notwithstanding the absence of any assignment, the Nominee Agreement created a trust relationship

such that HB2 held bare legal title and the Partnership held an equitable interest in the Subject Properties as of the petition date. "In a trust relationship . . . the trustee holds legal title while the beneficiary possesses an equitable title or property interest." *In re Southmark Corp.*, 49 F.3d 1111, 1118–19 (5th Cir. 1995). Resolving this dispute requires the Court to determine, under Texas law, whether the agreements obligated HB2 to hold the Subject Properties in trust for the benefit of the Partnership.

Under Texas law, an express trust is "a fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship and which subjects the person holding title to the property to equitable duties to deal with the property for the benefit of another person." TEX. PROP. CODE § 111.004(A). An express trust may be created in the following ways:

(1) A property owner's declaration that the owner holds the property as trustee for another person;

(2) A property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person;

(3) A property owner's testamentary transfer to another person as trustee for a third person;

(4) An appointment under a power of appointment to another person as trustee for the donee of the power or for a third person; or

(5) A promise to another person whose rights under the promise are to be held in trust for a third person.

TEX. PROP. CODE § 112.001. "There are no particular words required to create a trust if there exists reasonable certainty as to the intended property, object, and beneficiary." *Hubbard v. Shankle*, 138 S.W.3d 474, 484 (Tex. App.—Fort Worth 2004, pet. denied). The controlling inquiry is whether the documents manifest an intent to separate legal title from beneficial ownership and appoint a trustee with administrative powers and fiduciary duties. *See Jameson v. Bain*, 693

S.W.2d 676, 680 (Tex. App.—San Antonio 1985, no writ); *Perfect Union Lodge No. 10, A.F. & A.M. v. Interfirst Bank*, 748 S.W.2d 218, 220 (Tex. 2018) ("Implicit in this statutory definition is the requirement of a trustee with administrative powers and fiduciary duties.").

With respect to Subject Properties, the Nominee Agreement provides: "The Nominee holds legal title to the percentage interests in the properties more particularly described on **Exhibit A** attached hereto for the benefit of the Partnership."[5]  ECF No. 113-1 at 20.  The trust res is identifiable as those interests.  The beneficiary is the Partnership. The Nominee Agreement imposes upon HB2 contractual obligations consistent with those of a trustee holding record title for the benefit of another:

- The Nominee shall promptly deliver to the Partnership all instruments with respect to the Subject Properties, together with all recording information relative thereto, to the extent that such Nominee may come into possession of any thereof. ECF No. 113-1 at 20.

- Nominee shall promptly transmit to the Partnership copies of all notices, claims, demands, or other communications, which such Nominee may receive and which relate in any way to the Subject Properties.  Nominee shall be a nominal party to any action in response to or as a consequence of any such matter, unless otherwise requested by the Partnership.  Any such action, proceeding, negotiation or other response shall be conducted by Nominee following direction from the Partnership.  ECF No. 113-1 at 20.

The GUC Trustee characterizes the Agreements as creating merely an investment arrangement rather than a trust relationship. While the Partnership certainly expected to reap economic benefits from their investment, the operative language raises a genuine issue as to whether the Subject Properties were held in trust.   Unlike in a contractual arrangement where a creditor receives "a fixed rate of income or return on the value of property," a trust beneficiary receives

---

[5] The properties described in Exhibit A are the Subject Properties.

"the net income of the trust property."  *See* BOGERT'S THE LAW OF TRUST AND TRUSTEES § 17.  Here, the Partnership does not receive a fixed rate of return.  The Partnership's expected economic benefit depends on the performance of the Subject Properties themselves.  This structure is consistent with the concept of beneficial ownership of property in trust.

Viewing the evidence in the light most favorable to the nonmovant, the Court cannot conclude as a matter of law that the language of the Nominee Agreement fails to create an express trust in the Subject Properties.

The Partnership next asserts, in the alternative, that a resulting trust exists over the Subject Properties.  "A resulting trust arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another."  *Troxel v. Bishop*, 201 S.W.3d 290, 298 (Tex. App.—Dallas 2006).  "The purpose of invoking a resulting trust is to prevent unjust enrichment where a person has furnished trust property or consideration and an express trust fails." *Savell v. Savell*, 837 S.W.2d 836, 839 (Tex. App.—Houston 1992, writ denied).

Under the agreements, the partners furnished consideration in exchange for a portion of the partnership interest, but legal title over the Subject Properties never changed hands.  HB2 retained legal title before and after the Partnership was formed.  The essential elements of a resulting trust are missing.  The resulting trust claim over the Subject Properties fails as a matter of law.

### A.    Section 541 versus Section 544 of the Bankruptcy Code

The GUC Trustee argues that, even if the agreements created a trust relationship that conferred the Partnership an equitable interest over the Subject Properties, he can use his strong-arm powers under § 544(a)(3) to recover the interest for the benefit of the Estate.  Section 544(a)(3) grants a trustee the status of a bona fide purchaser, that can avoid unrecorded legal or equitable interests in real property.  *Mid-Am.*

*Petroleum, Inc. v. Adkins Supply, Inc. (In re Mid-Am. Petroleum, Inc.)*, 83 B.R. 937, 943 (Bankr. N.D. Tex. 1988).  Actual knowledge of the trustee is irrelevant.  *In re Hamilton*, 125 F.3d 292, 299 (5th Cir. 1997). The status of a bona fide purchaser is defined by state law.  *Id.* at 298.

Under Texas law, an unrecorded interest in real property is void as to a subsequent purchaser for value without notice.  TEX. PROP. CODE § 13.001(a).  Because actual knowledge is irrelevant, the GUC Trustee has the powers of a bona fide purchaser under Texas law unless he is charged with constructive notice or inquiry notice of the Partnership's alleged interest in the Subject Properties.

Under Texas law, a subsequent purchaser is charged with constructive notice if the property interest was properly recorded.  TEX. PROP. CODE § 13.002.  The summary judgment record reflects that the Nominee Agreement was not recorded in real property records.  The Partnership admits it was not recorded.  The GUC Trustee therefore cannot be charged with constructive notice as a matter of law.

Inquiry notice, on the other hand, is "triggered by notice of facts that would put a reasonably prudent person on a duty of inquiry." *Hamilton*, 125 F.3d at 299.  Under Texas law, a recorded deed in the chain of title places a subsequent purchaser under a duty to make a reasonable inquiry into the status of title.  *Id.*  Because a deed was not recorded, the GUC Trustee was not charged with a duty to inquire into real property records.  The Partnership has not identified any other facts in the record that would charge the GUC Trustee with inquiry notice of its alleged interest in the Subject Properties.  The mere fact that it is customary within the oil and gas industry for an operator to hold legal title to oil and gas leases for the benefit of other working interest owners does not charge a subsequent purchaser to inquire with every legal title holder regarding the nature of beneficial interests.  *See In re Jones*, 77 B.R. 541, 546 (Bankr. N.D. Tex. 1987).

In this case, possession does not provides a basis for inquiry notice.  Under Texas law, a subsequent purchaser is charged with inquiry notice when an entity other than the record title holder is in

11 / 20

possession of the property. *See Strong v. Strong,* 98 S.W.2d 346, 348 (Tex. Comm'n App. 1936). Here possession was by the record title holder. Nothing would have given rise to a further duty of inquiry. The GUC Trustee cannot be charged with inquiry notice as a matter of law.

The critical issue is whether the GUC Trustee can use its § 544(a)(3) power to avoid an equitable interest that, under § 541(d), would not have become property of the estate as of the Petition Date. As discussed above, the Partnership has raised a genuine issue as to whether it held an equitable interest in the Subject Properties under an express trust theory. But even assuming the Partnership held an equitable interest, § 544(a)(3) permits the GUC Trustee to avoid that interest.

The Partnership argues that § 544 cannot be used to avoid equitable interests that were not part of HB2's estate under § 541(d), citing *Official Creditor's Committee of Partners Oil Co. v. Partners Oil Company (In re Partners Oil Co.),* No. 83-015787-H3-5, Adv. No. 83-2272-H3, slip op. (Bankr. S.D. Tex. Dec. 7, 1983). The parties and the Court have been unable to locate a copy of the *Partners* opinion through legal research databases or archival sources. However, the case is discussed at length in *In re Jones*, 77 B.R. 541 (Bankr. N.D. Tex. 1987).

In *Partners*, a creditors' committee sought a preliminary injunction to prevent the debtor from distributing revenues to holders of unrecorded working interests. *Id.* at 546. The *Partners* court denied the injunction, recognizing that in the oil and gas industry, it is common for the operator to hold record title while beneficial ownership is held by others for administrative efficiency purposes. *Id.* To the extent described in *Jones*, *Partners* did not address the precise parameters when § 541(d) overcomes § 544(a). The *Jones* court rejected the notion that § 541(d) limits the application of § 544, relying on Texas law, which voids unrecorded interests against bona fide purchasers. *See id.* at 550–51. ("Whenever one entering into a business transaction fails to take the proper steps to protect his interest—whether that failure is caused

by ignorance, neglect or the failure to seek proper advice—the person must bear the result of his failure.").

The Partnership attempts to distinguish the *Jones* holding from here, because in *Jones*, the investors received the property assignments and some investors failed to record them. *Id.* at 542–43. Here, the Partnership argues that it could not record its interest because it never received an assignment of the properties. This distinction does not change the analysis. The parties chose to structure the transaction in a manner that left the Partnership's interest unrecorded and undiscoverable in real property records. The Partnership cannot now seek respite from the consequences of its decision on equitable grounds. Moreover, the Court does not even understand how it is true that nothing could have been recorded. The Partnership could have filed a statement of beneficial interest in the real property records. The Partnership failed to do so.

The Partnership argues that the GUC Trustee cannot use § 544(a)(3) to avoid an interest in property that would not have become property of the estate under § 541(d). Section 541(d) provides that the limitation is applicable only to property entering the estate under §§ 541(a)(1) and (a)(2). *Reasonover*, 236 B.R. at 227; § 541(d) ("Property in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate **under subsection (a)(1) or (2) of this section** only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." (emphasis added)).

Section § 541(a)(1) brings into the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." On the other hand, § 541(a)(3) brings into the estate any interest in property that the trustee recovers under § 550 through exercise of its avoidance powers. Section 550(a) provides that "to the extent that *a transfer is avoided under section 544* . . . the trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property . . . ." § 550(a) (emphasis added). Therefore, § 541(a)(3) is an

13 / 20

independent channel through which property may enter the estate. Notably, section 541(a)(3) is absent from the limiting language of § 541(d).

The Fifth Circuit case cited by the Partnership does not address this distinction between property entering the estate under subsection (a)(1) and subsection (a)(3). In *Vineyard v. Mckenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009 (5th Cir. 1985), the Fifth Circuit observed, as a "general rule" that § 541(d) prevails over the trustee's strong-arm powers because "Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." *Id.* at 1013. The *Quality Holstein* decision, however, was issued shortly after the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The 1984 Amendments were not retroactive. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353, § 553, 98 Stat. 363, 376 (1984). Consequently, the Fifth Circuit expressly noted that the 1984 amendments were not considered in its analysis. *Id.* at 1010 n.1. It was evaluating relief under the previous version of the statute.

The 1984 amendments materially altered the language of § 541(d). Prior to the effectiveness of the 1984 Act, § 541(d) referenced "subsection (a)." *Reasonover*, 236 B.R. at 227. Subsection (a) contains seven provisions defining the channels through which property may enter the estate. The 1984 Act amended § 541(d) to reference only subsection (a)(1) and (a)(2), not subsection (a) in its entirety. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353, § 456, 98 Stat. 363, 376 (1984). This deliberate change reflects Congress' intent that "the trustee's avoidance powers would trump claims based solely on the debtor's lack of equitable title." *Reasonover*, 236 B.R. at 227–28.

Because the Fifth Circuit in *Quality Holstein* did not consider the 1984 amendments and did not address the distinction between property entering the estate under subsections (a)(1) and (a)(3), the Fifth Circuit's decision in *Quality Holstein* does not control the issue here.

14 / 20

To be sure, this Court has previously held that § 541(d) may prevail over § 544(a)(3) in the context of a resulting trust claim.  In *Kang v. Kang (In re Kang)*, No. 12-03233, 2013 WL 870223 (Bankr. S.D. Tex. Mar. 6, 2013), the debtors held record title to real property, but the debtors' parents paid the down payment, made all monthly payments, and resided in the property.  *Id.* at *1.  This Court concluded that a resulting trust arose upon conveyance of the property to the debtors where the estate held mere legal title while the parents held equitable title.  *Id.* at *2.  The Court held that § 541(d) must trump § 544  in that scenario because the debtors never "owned" the property and beneficial ownership always remained with the parents.  *Id.* at *7.  The Trustee did not assert a 541(a)(3) argument.  *Kang*'s ruling was issued without the parties or the Court addressing the interaction between §§ 541(a)(3), 541(d) and 544.  *Kang* did not consider whether the limitation contained in § 541(d) applies to property entering the estate through the trustee's avoidance powers under § 541(a)(3).

While § 541(d) may restrict the estate's interest in property under § 541(a)(1), it does not bar property coming into the estate from a trustee's avoidance powers under § 541(a)(3).  Any equitable interest in the Subject Properties that the Partnership may have held is avoidable under § 544(a)(3) as a matter of law.

## II.     PARTNERSHIP ITEMS

The Nominee Agreement defines Partnership Items as: "all distributions, profits, emoluments and other receipts and revenues or other things of value of any nature or kind received with respect to, in exchange for or arising from the Subject Properties."  ECF No. 113-1 at 20. The Agreement further provides that these Partnership Items "belong legally to the Partnership" and "that Nominee has no legal interest in the partnership items."  ECF No. 113-1 at 20.  The Nominee is required to "promptly remit to the Partnership all partnership items received by Nominee.  ECF No. 113-1 at 20.

The Partnership Items at issue are the Sale Proceeds[6], the AFE Refunds[7], the Working Interest Owner Payments[8], the Prorated Refund[9] and the Disbursement Amounts[10].  ECF No. 116 at 33.  The Partnership asserts, under various trust theories, an equitable interest over these items.

The Sales Proceeds, Working Interest Owner Payments, Prorated Refund, the Disbursement Amounts represent revenues or proceeds derived from the underlying Subject Properties.  The right to these partnership items is derivative of its alleged equitable interest in the Subject Properties themselves.  As discussed above, any equitable interest the Partnership may have in the Subject Properties is avoidable under § 544(a)(3) because that interest was not recorded and would not defeat the rights of a bona fide purchaser under Texas law.

Because the GUC Trustee may avoid and recover the Partnership's asserted equitable interest in the Subject Properties, and the properties come into the bankruptcy estate, the Partnership cannot establish ownership of revenues or proceeds derived from those properties.  Section 541(a)(6) includes into the bankruptcy estate "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." § 541(a)(6).  "Congress intended this provision to be quite broad, not limited to the definition of 'proceeds' set forth in the Uniform Commercial Code, 'but encompassing any conversion in the form of

---

[6] The Plaintiffs allege that its pro-rated share in the sale proceeds attributable to the Subject Properties is no less than $3,341,686.24.  ECF No. 100 at 17.

[7] The Plaintiffs allege that it is owed $1,192,462.43 in funds that were not spent by HB2.  ECF No. 100 at 18.

[8] The Third Amended Complaint alleges that HB2 owes the Plaintiffs not less than $89,088.83 in working interest payments.  ECF No. 100 at 18.

[9] Prorated severance tax refund in the amount of $86,827.33 allegedly owed to the Plaintiffs.  ECF No. 100 at 20.

[10] The Plaintiffs allege they are owed $465,162.79 from amounts disbursed from this Court's prior Order relating to sale of production from a well in the Subject Properties. ECF No. 100 at 21.

property of the estate, and anything of value generated by property of the estate.'" *In re McLain*, 516 F.3d 301, 312 (5th Cir. 2008).

In *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009), this Court held that post-petition rental income from apartment properties constituted estate property under § 541(a)(6) even though the debtor previously assigned the rental income to its lender. *See id.* at 623–26. The Court explained that rental income is integral to ownership of the apartment property; without it, the property would generate zero value and the estate's interest would be diminished. *Id.* at 625.

The same principle applies here. The Sale Proceeds, Working Interest Owner Payments, Prorated Refund, and Disbursement Amounts represent value generated by the Subject Properties. Because the Subject Properties are estate property, those partnership items are included into estate property under § 541(a)(6). The Partnership cannot establish an equitable interest in those items. The Partnership's trust based theories with respect to those items fail as a matter of law.

However, the AFE Refunds are not proceeds of the Subject Properties under § 541(a)(6). Those refunds represent the return of excess funds advanced by the Partnership for HB2's drilling and completion costs for wells. They are not proceeds or revenue generated by the Subject Properties themselves.

The Partnership asserts it holds an equitable interest in the AFE Refunds under an express trust theory. The Court disagrees. "One of the major distinguishing characteristics of a trust is divided ownership of property, the trustee usually having legal title and the beneficiary having equitable title." BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 17. The plain language of the Nominee Agreement reflects no division of ownership over the partnership items, which include AFE Refunds. The Agreement provides that partnership items belong legally to the partnership and HB2 has no legal interest in the items. Under this structure, HB2 does not hold legal title to the AFE Refunds for the benefit of the Partnership. Instead, the Agreement allocates to the

17 / 20

Partnership the economic benefit of proceeds from the Subject Properties and requires the Nominee to remit those amounts. It does not, by itself, create an ownership interest in specific funds. In fact, payments and proceeds relating to the Subject Properties flowed through HB2's general operating account. ECF No. 113-1 at 41.

Because a trust requires bifurcation of ownership, and the Agreement disclaims HB2 from any ownership interest in the partnership items, the Partnership's express trust theory falls short. Similarly, because HB2 did not hold legal title to the AFE Refunds for the benefit of the Partnership, the essential element of a resulting trust, where title rests in one party and consideration is furnished by another, is absent. *See Haynes v. Molina*, No. 01-19-00917-CV, 2021 WL 4155822, at *6 (Tex. App.—Houston 2021) ("A purchase money resulting trust 'arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another.'"); *Troxel v. Bishop*, 201 S.W.3d 290, 298 (Tex. App.—Dallas 2006) ("A resulting trust arises by operation of law when title is conveyed to one person but the purchase price of a portion thereof is paid by another.").

The Partnership also seeks imposition of a constructive trust over the AFE Refunds. Under Texas law, the elements of a constructive trust are (1) breach of a fiduciary relationship, or in the alternative actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res. *In re Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994). "Because the constructive trust doctrine can wreak such havoc with the priority system ordained by the Bankruptcy Code, bankruptcy courts are generally reluctant 'to impose constructive trusts without a substantial reason to do so.'" *Id.* at 436 (citation and quotations omitted).

Here, the GUC Trustee argues an absence of fraud or a breach of a fiduciary relationship. The Partnership's response does not identify evidence of fraud. It relies on the existence of a fiduciary relationship. The GUC Trustee argues that there is no fiduciary relationship because the Partnership Agreement disclaims any fiduciary duties owed by HB2

to the partners. ECF No. 113-1 at 78. Under Texas law, certain fiduciary duties are nonwaivable in a partnership agreement. TEX. BUS. ORGS. CODE § 152.002(b)(2)-(3).

But the controlling document is the Nominee Agreement, which governs HB2's role as Nominee over the Subject Properties and defines obligations that HB2 owes to the Partnership with respect to the Partnership Items.

The issue is whether the Nominee Agreement created a fiduciary relationship between HB2 and the Partnership with respect to the AFE Refunds. Texas law recognizes that formal relationships like attorney-client or trustee relationships are fiduciary relationships as a matter of law. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 ( Tex. 2005). But Texas law is cautious in finding a fiduciary relationship from a contractual arrangement. *See id.* at 331 ("To impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit."). The existence of prior arms-length transactions entered into for the parties' mutual benefit is insufficient to establish a basis for a fiduciary relationship. *See id.*

The summary-judgment record reflects that the relationship between HB2 and the Partnership arose from an arm's-length business arrangement. Both parties benefited from the transaction. HB2 received investor capital to meet its drilling commitments, and the partner-investors received their share of profits from the properties. William Wicker, corporate representative of the Alpine Non-Op general partnership, described the business arrangement as "arm's length and heavily negotiated between the company and these individuals." ECF No. 113-1 at 30.

The Partnership has not identified evidence that HB2 owed or breached a fiduciary duty with respect to the AFE Refunds. HB2's retention of the AFE Refunds, without more, does not justify the imposition of a constructive trust. *See In re Haber Oil., Inc.*, 12 F.3d

19 / 20

426, 436 (5th Cir. 1994) ("[B]ankruptcy courts are generally reluctant to 'impose constructive trusts without a substantial reason to do so.'").

To be clear, the Court's ruling addresses only the Partnership's asserted equitable ownership theories over the Partnership Items. The Court does not determine any contractual claims the Partnership may assert against the estate under the Nominee Agreement.

## CONCLUSION

A separate order will be entered.

SIGNED 03/24/2026

Marvin Isgur
United States Bankruptcy Judge